David **AIELLO**

v.

**APEX MARINE CORPORATION, et al.**

Civ. A. No. 83–3240.

United States District Court,
E.D. Pennsylvania,
Civil Division.

May 14, 1985.
Supplemental Opinion May 22, 1985.

William Goldstein, Philadelphia, Pa., for plaintiff.

Jonathan K. Walters, Philadelphia, Pa., for Marine Engineers Beneficial Ass'n.

Walter H. Flamm, Jr., Philadelphia, Pa., for Apex Marine Corp. and West Chester Marine Shipping.

## MEMORANDUM

SCIRICA, District Judge.

This case involves a dispute over an employment agreement between the plaintiff, David Aiello, and the defendants, Apex Marine Corporation and Westchester Marine and Shipping Co., Inc. (hereinafter referred to as "Apex"). The other defendant is Marine Engineers Beneficial Association (hereinafter referred to as "MEBA"), the union representing all of the licensed engineers employed by Apex.

The collective bargaining agreement provides that in the normal course of hiring engineers aboard Apex vessels, the following procedure applies:

"The company agrees that when hiring any licensed engineer other than the chief engineer, the employee shall be obtained through the offices of the association (MEBA); provided that the engineers so named by the association shall be qualified to fill the available position, and further provided that the company shall have the right to select men whom the company considers qualified and satisfactory." Tanker Agreement (1981–1984), Section 1(b), p. 3

The normal hiring procedures, however, do not apply to the first crew of any vessel. Apex and MEBA agreed that:

"The company shall have the right to select the first crew on each vessel provided such employees are members of the association in good standing." Agreement of July 15, 1982, Section 1, p. 2.

In June, 1982, Apex was the shipping agent for the vessel "Groton". Plaintiff, a marine engineer, applied directly to the maritime personnel manager of Apex for the position of Third Assistant Engineer on the first crew of the "Groton", and entered into an oral employment agreement with Apex for a period of 15 months. MEBA was advised of this agreement and on June 17, 1982, issued its clearance card to plaintiff for service on the "Groton" for 15 months.

Plaintiff worked aboard the "Groton" until August 17, 1982, when Apex discharged him. Plaintiff alleges that MEBA unlawfully coerced Apex to terminate him and that he was replaced by another engineer selected by MEBA.

Plaintiff contends that he was wrongfully discharged and that Apex breached its employment agreement. He seeks damages from Apex for wages he would have received to the end of the contract. Plaintiff also asserts two tort claims against MEBA: first, that by procuring his discharge, MEBA tortiously interfered with his employment contract with Apex; and second, claiming to be a member of MEBA, that MEBA, in procuring his discharge breached contractual rights owed to him under the MEBA constitution.

Both defendants have filed motions to dismiss the complaint or, in the alternative, for summary judgment. MEBA argues that the exclusive jurisdiction of the National Labor Relations Board deprives this court of jurisdiction to decide plaintiff's

claim. Alternatively, MEBA contends that this court should grant summary judgment in its favor because plaintiff was never a member of MEBA and therefore, may not sue under a union constitution that did not cover him. Apex argues that plaintiff's claim must be dismissed because he was employed pursuant to a collective bargaining agreement and therefore has no claim under an independent employment agreement; because he has failed to exhaust his internal remedies; and because his claim is time barred. These arguments will be dealt with in due course.

*Applicable Law*

■ Plaintiff maintains that his employment contract is governed by admirality law. MEBA argues that jurisdiction is precluded by labor law. I must first determine whether labor law or admiralty law applies to this case.

Plaintiff's state law tort claims against MEBA are for wrongful interference with contractual relationship and violation of the union constitution. Plaintiff recognizes that the state law claims against MEBA do not fall under admiralty jurisdiction and that if MEBA were the only defendant this court would not have jurisdiction. (Plaintiff's answer to MEBA motion for summary judgment, p. 5). Plaintiff asserts however, that this court has pendent jurisdiction over MEBA because his claim is related to the action against Apex, which he alleges arises out of a maritime contract.

Plaintiff maintains that he entered into an agreement with Apex directly to serve as Third Assistant Engineer on the "Groton" for a period of 15 months and the agreement of an officer to man a vessel is within the admiralty jurisdiction of the federal courts. "A contract for hire either of a ship or of the sailors and officers to man her is within the admiralty jurisdiction." *Kossick v. United Fruit Company*, 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961). Apex seems to tacitly recognize that if its oral agreement with the plaintiff stood alone, it would fall under admiralty jurisdiction. (Apex's reply brief to memorandum contra Apex's motion for summary judgment, p. 4). Apex argues however, that its employment agreement with plaintiff is superseded by the collective bargaining agreement with MEBA, and therefore federal labor law rather than admiralty law applies.

When faced with conflicting labor agreements, courts have held that individual employee contracts are superseded by collective bargaining agreements. "The very purpose of providing by statute for the collective agreement is to supersede the terms of separate agreements of employees with terms which reflect strength and bargaining power and serve the welfare of the group." *J.I. Case Company v. NLRB*, 321 U.S. 332, 337, 338, 64 S.Ct. 576, 580, 88 L.Ed. 762 (1944).

> Individual contracts, no matter what the circumstances that justify their execution, or what their terms, may not be availed of to defeat and delay the procedures prescribed by the National Labor Relations Act looking to collective bargaining ... nor may they be used ... limit or condition the terms of the collective agreement.

*Id.*

To escape the clear doctrine of supersession, plaintiff argues that because he was employed directly by Apex, he was hired outside the scope of the bargaining agreement and therefore, supersession does not apply. Plaintiff cites neither facts nor authority for this position. Plaintiff's claims against both defendants are based on Apex's oral agreement to hire him as a member of the first crew of the "Groton". The agreement which gave Apex the right to select the first crew on each vessel also recited:

> Except as specifically amended herein, all conditions covering employment of licensed officers aboard integrated tug-barge vessels owned or operated by the company shall be the same as those contained in the collective bargaining agreement presently in effect between the parties with respect to U.S. Flag Ocean-Going Tanker Vessels. Agreement of July 15, 1982, Section 1, p. 2.

Plaintiff's employment contract with Apex is not independent of the collective bargaining agreement. Indeed, the rights secured by the employment contract are defined by the collective bargaining agreement. The fact that hiring procedures vary slightly with first crews does not change the holding of *Case* which requires supersession of individual employment contracts by a collective bargaining agreement. Plaintiff's claims therefore must be based on labor law and the collective bargaining agreement, rather than on an independent maritime contract.

Plaintiff's tortious interference with contract claim against MEBA is substantially dependent upon an analysis of the terms of the collective bargaining agreement. When the resolution of a state law claim depends upon the analysis of the terms of a labor agreement, "that claim must either be treated as a § 301 claim ... or dismissed as preempted by federal labor contract law." *Allis-Chalmers Corp. v. Lueck,* — U.S. —, —, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). Since plaintiff's state law claim against MEBA for tortious interference with contract depends upon the meaning of terms within the collective bargaining agreement, I hold that plaintiff's claim is preempted and federal labor law must be applied.

*Union Membership*

To determine plaintiff's rights under labor law, I must first consider whether plaintiff is a member of the labor union MEBA.

■ MEBA argues that although plaintiff had applied for membership, his application had never been approved and therefore, plaintiff has no claim for breach of the MEBA constitution. An applicant for union membership may not sue for breach of contract based on the union constitution, because he has no vested contract rights at stake. *Hurwitz v. Directors Guild of America,* 364 F.2d 67, 71 (2d Cir.1966). Plaintiff does not dispute that his claim against MEBA for breach of the union constitution must be denied if he is not a member, but argues that there is a factual dispute as to whether he is a member.

■ The law does not limit a union's right to select its own members and the mere application for membership does not constitute membership or result in vested rights. *Wallace v. International Organization of Masters, etc.,* 547 F.Supp. 155 (S.D.N.Y.1982). Acceptance into membership of MEBA is governed by Article III of the National Constitution, Article III and IV of the District Constitution, and Rules and Regulations No. 3 promulgated by the National Executive Committee. Article III of the National Constitution requires those seeking membership to assume an applicant status. Rules and Regulations No. 3 recites in part:

"(2) The applicant shall be obliged to pay ... all the payments required from its full members ... and its full initiation fee.

(3) Applicant shall be entitled to all the rights and privileges of members with respect to shipping rights ... in accordance with the shipping rules of each district.

(4) The MEBA reserves the absolute right in its own discretion for any reason whatsoever, (a) at any time prior to the acceptance into membership to terminate any applicants status as such, or (b) to reject the application for membership...."

Article IV of the District Constitution provides:

*Section I:* Any person duly qualified as prescribed in Article III may become a member of this association upon payment of the required initiation ... fee ... and three months dues ... and being duly elected according to the provisions of the constitution and the by-laws of the district.

*Section 2:* An application for membership shall be referred to an investigating Committee which will report thereon to the membership.

*Section 3:* The membership shall vote at membership meetings on the report of the Committee.

*Section 4:* When the applicants are voted on, a majority for or against the total

votes cast shall determine their election or rejection....

In arguing that he is a member of MEBA, plaintiff points out that he graduated from the MEBA School of Engineers, paid installments on his initiation fee, and is paying dues. He also maintains that he was issued a shipping card by MEBA and was given a clearance card to serve aboard vessels which, under the collective bargaining agreement, he could only do as a member. In addition, he argues that MEBA has been his representative and sole bargaining agent. Plaintiff contends that these factors make his membership in MEBA a material issue of fact that cannot be decided in a motion for summary judgment.

MEBA does not dispute plaintiff's facts, but cites cases interpreting the MEBA constitution which have held "there is a definite distinction between members and applicants" and that the most important step necessary to obtain membership is being accepted by a majority vote of the members. *Feist v. NMEBA,* Civil Action No. 83–5507, p. 4 (E.D.La., Nov. 29, 1983); *Bierma v. NMEBA,* Civil Action No. 79–0079, p. 5 (S.D.Ala., Nov. 9, 1979). In both *Bierma* and *Feist,* the applicants had received the same rights and credentials that plaintiff claims make him a member in good standing. Yet both courts ruled that applicants were not members without the majority vote of the membership. Furthermore, the court in *Feist* specifically rejected the contention that membership in MEBA was an issue of fact that could not be decided on summary judgment. *Feist, supra* at p. 5.

■ MEBA submitted an affidavit of a union official who stated that David Aiello had not been accepted as a member. Plaintiff does not assert that his application had been voted on by a majority of members

nor does he cite authority to refute *Bierma* and *Feist.* Because plaintiff's application has not been voted on by a majority of union members, I hold that he is not a member of MEBA. An applicant for union membership may not sue for breach of contract predicated on the union's constitution. Therefore, I will grant MEBA's motion for summary judgment on plaintiff's breach of constitution claim.

■ Although plaintiff has no vested rights under the MEBA constitution, the fact that he is not a member of the union does not mean that he has no rights under the collective bargaining agreement. Under Rule and Regulations No. 3, which is promulgated by the National Executive Committee under Article III, Section 3 of the national constitution:

"(3) Applicants shall be entitled to all the rights and privileges of members with respect to shipping rights ... in accordance with the shipping rules of each district."

MEBA does not challenge plaintiff's contention that the union has been his representative and sole bargaining agent in connection with his maritime employment. Courts have generally recognized that when a union acts as the exclusive representative of all employees in a collective bargaining unit, it owes each of them, whether or not a union member, the duty of fair representation in the administration and enforcement of collective bargaining agreements.[1] *Bass v. International Brotherhood of Boilermakers,* 630 F.2d 1058, 1062 (5th Cir.1980); *Deboles v. TWA, Inc.,* 552 F.2d 1005, 1014 (3d Cir.1977).

Although not a union member, plaintiff still has federally protected rights under the collective bargaining agreement. Both defendants however, make separate argu-

---

1. This court recognizes that plaintiff in his amended complaint does not allege that MEBA engaged in unfair labor practices by breaching its duty of fair representation. Plaintiff's state law claim that MEBA has *tortiously interfered* with a contract is preempted by federal labor law and is governed by the collective bargaining agreement. The duty the union owes to a non-

member under the collective bargaining agreement is a duty of fair representation; and to establish a federal labor contract claim against MEBA, the plaintiff must show that MEBA breached its duty of fair representation rendering internal grievance procedures futile. See *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967).

**1262**

ments as to why plaintiff has no cause of action in this court.

*Jurisdiction*

MEBA contends that plaintiff's claims against it cannot be brought in federal court because the subject matter of this lawsuit falls under the jurisdiction of the National Labor Relations Board. Whether this court or the NLRB has jurisdiction depends upon whether MEBA engineers are supervisors or employees as defined by the Labor Management Relations Act.

MEBA claims that whether plaintiff is a supervisor or an employee is in dispute and given plaintiff's disavowal of normal supervisory duties, is an issue for the NLRB to decide. Also, MEBA contends that even if plaintiff is a supervisor, his allegation of discharge improperly procured by the union constitutes an unfair labor practice which must be determined by the NLRB. Plaintiff argues that he is a supervisor as defined by the Labor Management Relations Act and therefore, the NLRB does not have jurisdiction. To support his position, plaintiff points out that the collective bargaining agreement between MEBA and Apex specifically provided:

> "The parties agree that all engineers to whom this agreement is applicable are 'supervisors' within the meaning of the Labor Management Relations Act of 1947 as amended." (Preamble, Tanker Vessel Agreement, 1981–1984)

Plaintiff also maintains that courts have upheld findings by the NLRB that MEBA engineers are supervisors under the LMRA and are therefore not within the jurisdiction of the NLRB. *District II MEBA v. NLRB*, 353 F.2d 904 (D.C.Cir.1965). Plaintiff notes that he did apply to the NLRB for relief but that the board determined that he was a supervisor and denied relief for lack of jurisdiction. Finally, plaintiff argues that only when union conduct directed against supervisors adversely affects employees covered under Title I does union action confer jurisdiction on the NLRB. Plaintiff contends that in this case MEBA action could not possibly affect Title I employees and therefore, the NLRB cannot have jurisdiction.

The conflicting arguments of the parties are based on the complicated legislative history of the Labor Management Relations Act of 1947 (LMRA) 61 Stat. 136 and its precursor, the National Labor Relations Act of 1935 (NLRA) 49 Stat. 449. The NLRA dealt primarily with unfair labor practices, union certification, and the jurisdiction of the National Labor Relations Board. *Isbrandtsen v. District II, MEBA*, 256 F.Supp. 68, 71 (1966). In 1947 the Supreme Court ruled that supervisors were entitled to coverage under the NLRA in the absence of a decision by Congress to exclude them. *Packard Motor Car Company v. NLRB*, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947). This decision caused difficulties in the collective bargaining setting. Supervisors are required to act in the employer's best interest and are customarily given authority over other employees. When supervisors are organized and affiliated with the rank and file however, they may become subject to labor representatives who have different goals from the employers. *Elkes v. B'Nai Brith*, 540 F.Supp. 98, 104 (D.C.Cir.1982).

The Labor Management Relations Act addressed this potential conflict of loyalty by amending the NLRA and absorbing it into Title I. *Isbrandtsen, supra*. The amendment changes the definition of employee to exclude supervisors from Title I.[2] *Florida Power and Light v. Electrical Workers Local 641, et al.*, 417 U.S. 790, 807, 94 S.Ct. 2737, 2746, 41 L.Ed.2d 477 (1974). Title III (§ 301) of the LMRA gives

**2.** Title 29 U.S.C. § 152(3) provides in part:
"An employer shall include any employee, ... but shall not include ... any individual employed as a supervisor...."
Title 29 U.S.C. § 152(11) provides:
"The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, layoff, re-

call, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to remember to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

the federal courts jurisdiction over breach of contract actions.[3]

■ These amendments precluded supervisors from bringing unfair labor practices before the NLRB. Supervisors however, are not precluded from bringing actions under any other title of the LMRA including Title III. These claims are not governed by Title I definitions:

"Overall, the legislative history of the LMRA resolves any doubts on the question of Section 301(a)' applicability to supervisor's unions in favor or such jurisdiction. Congress' intent in enacting the supervisor exception in Section 2(3) is expressed uniformly and often; Congress desired to exempt an employer's interaction with its supervisors from only those obligations imposed by Title I over which the NLRB has juridiction."

*Elkes, supra* at 104.

■ Based on this legislative history, MEBA claims that whether plaintiff is a supervisor or an employee is at issue and must be determined by the NLRB. MEBA cites no authority for the proposition that MEBA engineers are not supervisors, nor refutes the authority cited by plaintiff. In the collective bargaining agreement MEBA agreed that its engineers are supervisors as defined by the NLRA. The NLRB has ruled that MEBA engineers are supervisors, *District II MEBA v. NLRB, supra,* and specifically in this case found that Mr. Aiello is a supervisor. I find that plaintiff is a supervisor as defined by the LMRA.

■ MEBA, in the alternative, argues that whether employee or supervisor, plaintiff's discharge could constitute an unfair labor practice which must be determined by the NLRB. *Local 926, International Union of Operating Engineers AFL–CIO v.*

*Robert C. Jones,* 460 U.S. 669, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983). In that case, a supervisor's discharge had been procured by a construction union. The court found that where union conduct affected employees who are protected under Title I, this union action confers jurisdiction on the NLRB. *Id.* at 1459. Although Jones was a supervisor in the construction industry he held a low-level supervisory position and it was likely that he would be employed in a non-supervisory position in the future. Under these circumstances, the court found that the union's action against Jones would intimidate him in the exercise of his rights under Section 8(b)(1)(A) of Title I once he again became an employee.[4] Since Jones may process grievances arising under the collective bargaining agreement, the union action was prohibited under Section 8(b)(1)(B) of Title I which forbids a union to coerce employers in the selection of a representative for the adjustment of grievances. *Id.* at 1459, 1460.

None of the factors which suggest that actions taken against a supervisor may affect employees under Title I exist in this case. MEBA is a union consisting solely of supervisors that cannot be shifted to non-supervisory positions. MEBA members are not authorized or expected to deal with grievances arising under the collective bargaining agreement. Since whatever action a union may take against a MEBA member will not qualify as an unfair labor practice under Title I, the NLRB does not have jurisdiction over plaintiff's cause of action.[5] I reject MEBA's contention that jurisdiction in this matter rests with the NLRB and hold that this court has jurisdiction over the plaintiff's claim under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

---

**3.** Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). 29 U.S.C. § 185(a) provides "suits for violation of contract between an employer and a labor organization ... may be brought in any district court of the United States having jurisdiction with respect to the parties."

**4.** 29 U.S.C. § 158(b) provides:
"It shall be an unfair labor practice for a labor organization or its agents—

(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section [7] of this title ... or (B) an employer in the selection of his representative for the purposes of collective bargaining or the adjustment of grievances; ...."

**5.** On reconsideration of David Aiello's complaint, the general counsel of the NLRB stated that the *Jones* case was not a departure from precedent and denied plaintiff permission to file an untimely appeal.

### Exhaustion of Remedies

█ Apex recognizes that § 301 of the LMRA applies to plaintiff. Apex contends however, that since plaintiff's claim under § 301 is based upon breach of the collective bargaining agreement, he is bound by the terms of that agreement. Employees seeking to assert contract grievances must at least attempt to exhaust grievance procedures established by the bargaining agreement. *Republic Steel v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). Apex maintains that because plaintiff has failed to pursue binding grievance remedies outlined in collective bargaining agreement, he may not bring this action in federal court.

The collective bargaining agreement provides that grievances are to be determined by a Licensed Personnel Board consisting of two persons appointed by the union, two persons appointed by the company and a mutually agreed upon arbitrator. The board may resolve any grievance by a majority vote or mutual agreement and such resolution is final and binding on the parties.[6]

Plaintiff contends that because his complaint is against both the union and the company, to submit his grievance to representatives of both defendants would be an exercise in futility. Plaintiff relies on *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), which held that an employee is not required to pursue a grievance process that is wholly futile.

Plaintiff misinterprets *Glover.* In *Glover,* black and white carmens' helpers brought suit in federal court against the employer and the union claiming that they acted in concert to bar blacks from promotion wholly because of race. *Id.* at 325, 326, 89 S.Ct. at 549. The plaintiffs had made many complaints to the company and the union to no avail. Although plaintiffs called upon the union to process a grievance on their behalf, no grievance was filed.[7] *Id.* at 326, 89 S.Ct. at 549. In

---

**6.** Section 2 of the collective bargaining agreement reads in part:

All disputes relating to the interpretation or performance of this agreement shall be determined in accordance with revisions in this section.

(b) There shall be a licensed personnel board consisting of two (2) persons appointed by the union and two (2) persons appointed by the Company.

The Arbitrator designated will serve as the chairman of any meeting of the Licensed Personnel Board. If said Board resolves any grievance either by majority vote or by mutual agreement, said grievance shall be deemed settled.

. . . . .

(c) The decision of a majority of the Board or the Arbitrators, as the case may be, shall be final and binding upon the parties and shall be complied with by both parties immediately upon its issuance.

. . . . .

(e) A fixed date in each calendar month during the term of this agreement shall be designated for the meeting of the Licensed Personnel Board with respect to any grievance that each party may have. The Company and the union agree that in order to properly have a grievance submitted to the Licensed Personnel Board at its regular monthly meeting, at least five (5) days notice in writing must be given to the other party, set-

ting forth the nature of the grievance and the relief requested, . . . .

**7.** "On many occasions the Negro plaintiffs through one or more of their number, have complained both to representatives of the Brotherhood and to representatives of the Company about the foregoing discrimination and violation of the Collective Bargaining Agreement. Said Negro plaintiffs have also called upon the Brotherhood to process a grievance on their behalf with the Company under the machinery provided by the Collective Bargaining Agreement. Although a representative of the Brotherhood once indicated to the Negro plaintiffs that the Brotherhood would 'investigate the situation,' nothing concrete was ever done by the Brotherhood and no grievance was ever filed. Other representatives of the Brotherhood told the Negro plaintiffs time and time again: (a) that they were kidding themselves if they thought they could ever get white men's jobs; (b) that nothing would ever be done for them; and (c) that to file a formal complaint with the Brotherhood or with the Company would be a waste of their time. They were told the same things by local representatives of the Company. They were treated with condescension by both Brotherhood and Company, sometimes laughed at and sometimes 'cussed' but never taken seriously. When the white plaintiffs brought their plight to the attention of the Brotherhood, they got substantially the same treatment which the

rejecting the defendants' request for dismissal for failure to exhaust remedies, the court held that "the exhaustion requirement is subject to a number of exceptions for [a] variety of situations." *Id.* at 329, 89 S.Ct. at 549. Ruling that *Glover* was a situation where exhaustion was not required, the court stated:

"The circumstances of the present case call into play another of the most obvious exceptions to the exhaustion requirement—the situation where the effort to proceed formally with contractual or administrative remedies would be wholly futile ... The court has rejected the contention that employees alleging racial discrimination should be required to submit their controversy to a group which is in large part chosen by (defendants) against whom their real complaint is made." *Id.* at 330, 89 S.Ct. at 551.

 . . . . .

"The allegations are that the bargaining representative of the car employees have been acting in concert with the railroad employer to set up schemes and contrivances to bar negroes from promotion wholly because of race. If this is true, insistence that petitioners exhaust the remedies administered by the union and the railroad would only serve to prolong the deprivation of rights to which these petitioners according to their allegations are justly and legally entitled." *Id.* at 331, 89 S.Ct. at 552.

 Plaintiff contends that it would have been futile to engage in arbitration of his grievance. Plaintiff however, must attempt to exhaust his contractual remedies before asserting that the procedure would be wholly futile. "The attempt to exhaust

contractual remedies required by *Maddox* is easily satisfied by petitioners repeated complaints to company and union officials." *Glover* at 331, 89 S.Ct. at 552.[8] The issue here is whether plaintiff "attempted" to exhaust his contractual remedies. Failure on plaintiff's part will bar his claim. *Cronin v. Bechtel Power Corp.*, 499 F.Supp. 16, 18 (M.D.Pa.1979).

Plaintiff does not allege that he attempted to invoke the grievance procedure nor does he claim that the union refused to process his grievance. Plaintiff argues instead that *Glover* means that he "should not be required to submit the matter to a grievance arbitration proceeding ..." (Plaintiff's answer to motion of Apex for summary judgment, p. 8) and that "his failure to participate in a grievance/arbitration proceeding is not a bar to the instant litigation." (*Id.* at p. 9) After oral argument, plaintiff submitted an affidavit that set forth communications he had with MEBA officials to try "to seek informal redress of the wrongful discharge and to determine whether MEBA would be of any assistance to him in getting his job back." (Plaintiff's counsel's letter to this court of November 27, 1984, p. 2). Plaintiff's affidavit recites that none of the officials with whom he spoke indicated that he should file a grievance but told him instead that he should accept termination as an exercise in MEBA power. Plaintiff states that after these conversations he "formed the settled impression that MEBA would not help him in this matter and would actively resist any attempt he might make through the union or union proceedings to redress the premature termination of his employment." (Plaintiff's affidavit, November 27, 1984, p.

Negro plaintiffs received, except that they were called 'nigger lovers' and were told that they were just inviting trouble. Both defendants attempted to intimidate plaintiffs, Negro and white.

8. In *Maddox* the Supreme Court held "it cannot be said in the normal situation that contract grievance procedures are inadequate to protect the interest of an aggrieved employee until the employee has attempted to implement the procedure and found them so." *Maddox, supra* 379 U.S. at 653, 85 S.Ct. at 616. See also, *Vaca, et*

*al. v. Sipes Administrator,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), where an employee who had filed a grievance that was not taken to the final steps of the grievance process by the union brought an action under § 301 in federal court. The Supreme Court held that in order to show that he had been prevented from exhausting his contractual remedies by a union's wrongful refusal to process the grievance, an employee must prove that the union either arbitrarily ignored a meritorious grievance or processed the claim in a perfunctory fashion. *Id.* at 190, 191, 87 S.Ct. at 916–917.

2). Plaintiff's affidavit does not recite that he even asked that a grievance be officially filed. Plaintiff cannot excuse his failure to pursue remedies under the grievance process by alleging that the union should have taken action on his behalf without specifically being asked to do so. *Leury v. U.G.I. and Local No. 1941,* 451 F.Supp. 278, 279, 280 (M.D.Pa.1978).

 Whether or not the exhaustion of a grievance process would be futile is a determination to be made by the courts based on union and company reaction to an employee's attempt to use the grievance process and the validity of the grievance.[9] Since plaintiff in this case made no formal attempt to use the grievance process, it is difficult to determine whether that procedure would have been wholly futile.

 Furthermore, plaintiff's allegations do not begin to approach the quantity and severity of the factors faced by the aggrieved plaintiffs in *Glover.* In the absence of facially abhorrent indicators such as race, religion, national origin or sex, plaintiff should have the burden of establishing that his attempt to grieve his complaint was substantial and that the effort would have been wholly futile. Even lacking discriminatory factors such as race, religion, national origin or sex, plaintiff's attempts to use the arbitration process do not favorably compare with the attempts made by the plaintiffs in *Glover.*

*Statute of Limitations*

Finally, Apex argues that even if the grievance process in this case was futile, plaintiff's action is barred by a six-month statute of limitations which is applicable to wrongful discharge actions. Plaintiff counters that the state statute of limitations applies in this case.

To support his position, plaintiff relies on *International U., U.A., A. & A.I.W. v. Hoosier C. Corporation,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). In *Hoo-*

*sier,* a union brought an action under § 301 for breach of the collective bargaining agreement. To determine whether federal or local statutes of limitation apply, a court must consider whether there is a need for federal uniformity to promote the formation of collective bargaining agreements and the private settlements of disputes under it. *Id.* at 702, 86 S.Ct. at 1111. Based on this criteria, the court in *Hoosier* found that when a union files a federal suit for breach of the collective bargaining agreement, the collective bargaining process has already broken down and the case may be treated as an ordinary breach of contract. Therefore, a lack of uniformity in the statute of limitations will not frustrate federal labor policy and state law may apply. *Id.*

The leading case in this area is *Delcostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The Supreme Court held that when an individual employee files suit under § 301 against the employer and the union, a federal limitation of six months should be applied. The court reasoned that when an employee brings suit under § 301 against a company and a union, this cause of action, unlike *Hoosier,* amounts "to a direct challenge to the private settlements of disputes under the collective bargaining agreement." *Id.* at 2291. Since federal policies are at stake, a federal statute of limitations of six months was applied. *Id.* at 2293.

The plaintiff makes four arguments as to why *Delcostello* is not applicable here. First, plaintiff argues that *Delcostello* and the cases decided subsequently, involved suits under 29 U.S.C. § 185 (§ 301 of the Act of 1947) pertaining to alleged violations of collective bargaining agreements and that since the employment contract that was allegedly breached by Apex was not a collective bargaining agreement, *Delcostello* should not apply.

---

**9.** The fact that a grievance is not processed to conclusion does not necessarily suggest that a union has violated its duty of fair representation or acted in bad faith. A union has discretion and latitude in interpreting a collective bargain-

ing agreement and may properly determine that a grievance does not merit consideration. See *Vaca v. Sipes, supra* 386 U.S. at 190–193, 87 S.Ct. at 916–918; see also, *Cronin v. Bechtel Power Corp., supra,* at 19.

The rights the plaintiff secured under his oral employment contract with Apex are defined by the collective bargaining agreement and as the exclusive bargaining representative for the plaintiff, MEBA has a statutory obligation to fairly represent his interest in the administration and enforcement of that agreement. Suits may be properly instituted under § 301 for violations of any contract between the employer and the union. *Teamsters Local Union No. 30 v. Helms*, 591 F.2d 211, 216 (3d Cir.1979); *Smith v. D.C.A. Food Industries, Inc.*, 269 F.Supp. 863, 869 (D.Md. 1967). To prevail in an action under § 301, all a claimant need show is that a union breached its duty of fair representation and that a company breached its contract under the collective bargaining agreement. *Long v. International Union of Electrical Radio and Machine Workers*, 544 F.Supp. 1375, 1383 (E.D.Pa.1982). The fact that a union's duty to an employee arises from its statutory obligation rather than a bargaining contract does not alter or invalidate a § 301 claim. *Id. Richardson v. Communication Workers of America*, 443 F.2d 974, 981 (8th Cir.1971). Plaintiff's argument that the union's duty to him does not arise directly from the collective bargaining agreement, does not alter the fact that this claim is in the plaintiff's own words "a straight forward Section 301 breach of contract claim ..." (Plaintiff's answer to motion of defendant, Apex Marine Corporation, p. 14) which derives from the collective bargaining agreement. Therefore, *Delcostello* is applicable to this case.

Plaintiff's second argument is that his claim by analogy is closer to *Hoosier* than it is to *Delcostello*. The facts simply do not support this position. *Hoosier* involved a union suing a company claiming breach of the collective bargaining agreement. *Delcostello* dealt with an employee suing both the company and the union claiming that the collective bargaining process was invalid. The situation in *Delcostello* is more closely aligned with the facts in this case.

Plaintiff's third argument is that the federal statute of limitations cannot be applied here because in *Delcostello*

the limitation was calculated from the date of an arbitration adjudication and in this case there has been no arbitration to toll the limitation period. The six month statute of limitations adopted in *Delcostello* begins to run when it becomes clear that further internal appeals would be futile. *Scott v. Local 8863, International Brotherhood of Teamsters*, 725 F.2d 226 (3d Cir. 1984). Although in *Delcostello*, the futility of further union appeals became apparent or should have become apparent to plaintiff after arbitration proceedings, this does not mean that arbitration is required in every case to toll the statute. The six month statute of limitations begins to run when a union's breach of duty consists of a refusal to pursue a grievance to arbitration or even through the preliminary stages of a grievance process. *Vourloumis v. Maritime Overseas Corporation*, Civil Action No. 81–4697 (E.D.Pa., Feb. 6, 1984). In *Scott*, which did not involve arbitration, the six month statute of limitations began to run after a series of letters between the union and plaintiff establishing that the union did not see any basis for proceeding to arbitration. *Scott, supra* at 229. At that time, it became apparent to plaintiff that the union was not going ahead with processing his grievance. In this case, the six month statute of limitations began to run on a § 301 action when David Aiello became aware that neither the union or the company would process his grievance or when the union breached its duty of fair representation.

Plaintiff's employment was terminated on August 17, 1982. According to plaintiff, a few days after termination, he "formed the settled impression that MEBA would not help him in this matter, and would actively resist any attempt he might make through the union or union proceedings to redress the premature termination of his employment." (Plaintiff's affidavit, November 27, 1984, p. 2) Plaintiff did not file suit until July 7, 1983, almost 11 months after he became aware, or should have become aware, that MEBA would take no action to assist him. Even though I find that plaintiff did not show that he

made the requisite attempt to exhaust the grievance procedure, by his own admission he was aware that the union was not going to process his grievance. Plaintiff's cause of action is barred by the statute of limitations adopted in *Delcostello.*

■ Finally, plaintiff argues that because the six month statute of limitations was borrowed from Title I of the LMRA relating to unfair labor practices, it is not applicable to MEBA which is a union of supervisors. Although *Delcostello* applied a statute of limitations borrowed from Title I because it was the most suitable to fill a gap in the federal law, the court held that it did not change the nature of the cause of action. *Delcostello, supra* at 2293, n. 21; 2291. Even when an employee must prove that the union breached its duty of fair representation, the employee's suit against the employer remains a suit under § 301. *Vaca, supra* 386 U.S. at 186, 87 S.Ct. at 914. The fact that the Supreme Court chose to apply a Title I statute of limitations to an action under § 301 does not transform the cause of action into something else. Since it remains part of an action under § 301, it may be applied to a union of supervisors and is therefore applicable to Mr. Aiello.

Although this court has jurisdiction over the plaintiff's claim under § 301 of the LMRA and Mr. Aiello may bring such a cause of action even as a non-member, because he has failed to attempt to exhaust his contractual remedies and because of the bar of the statute of limitations, I must grant both defendant's motions for summary judgment.

## SUPPLEMENTAL MEMORANDUM

■ In light of the recent Third Circuit opinion of *Taylor v. Ford Motor Company and Local Union 980, UAW,* 761 F.2d 931 (3d Cir.1985), it is appropriate to analyze Mr. Aiello's complaint in the context of that decision. Although plaintiff amended out his claim of breach of fair representation by MEBA, and asserts he is not proceeding under that theory of liability, the substance of his claim that the grievance procedure would be futile was that MEBA breached its duty of fair representation. Under the analysis of *Taylor,* plaintiff's complaint is the equivalent of a hybrid § 301/fair representation claim to which *Delcostello* applies.

■ In addition to making a simple breach of contract claim against Apex, plaintiff also alleged that MEBA improperly interfered with that contract forcing his premature discharge. Furthermore, plaintiff believed that "MEBA would actively resist any attempt he might make through the union or union proceedings to redress the premature termination of his employment." (Plaintiff's affidavit, November 27, 1984, p. 2) Citing *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), plaintiff correctly points out that an employee is not bound by finality provisions relating to arbitration in a collective bargaining agreement where the union does not properly represent the employee at the arbitration hearing. (Plaintiff's response to reply brief of Apex, p. 3) Plaintiff asserts that because his complaint alleges misconduct against both the company and the union:

> "Plaintiff in the instant case could not be fairly represented by MEBA at an arbitration hearing where plaintiff contends that MEBA was responsible for his premature discharge. Therefore, the arbitration would be an exercise in futility." (Plaintiff's response to reply brief of Apex, p. 3)

In order to prove that internal grievance procedures were wholly futile, plaintiff must show that MEBA breached its duty of fair representation. *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). Although plaintiff does not specifically aver in his complaint that MEBA breached its duty of fair representation, plaintiff in arguing that the grievance process is futile, must and does allege that MEBA has not and will not fairly represent his interests. Plaintiff's action is not a straight-forward breach of contract suit between a union and a company as in *International U., U.A., A. & A.I.W. v. Hoosier C. Corporation,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), but the equiva-

lent of a hybrid § 301/fair representation claim against a union and a company by an employee who claims that the grievance process would have been futile. Because this claim bears "a family resemblance" to an unfair labor practice under the NLRA and amounts to a direct challenge to the private settlement of disputes under the collective bargaining agreement, the six month statute of limitations adopted in *Delcostello* is applicable to plaintiff's complaint. *Taylor, supra,* p. 933.