542 A.2d 383

Linda DEARDEN

v.

**LIBERTY MEDICAL CENTER, INC.**

**No. 1460, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

June 10, 1988.

Charles Lee Nutt (Clements & Nutt, on the brief), Baltimore, for appellant.

Steven D. Frenkil (Donald R. Delorenz and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellee.

Argued before GILBERT, C.J. WILNER, J., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

WILNER, Judge.

Linda Dearden believes that she has a grievance against her employer. There is available to her, as part of her employment contract, a specific, multi-step grievance procedure which she has declined to use on the ground that it would be "fruitless." Instead, she sued the employer in the Circuit Court for Baltimore City, seeking a declaratory judgment that the employer, by its conduct, breached her employment contract, and $50,000 in damages. The court dismissed her complaint, on the employer's motion, for failure to exhaust her contractual remedies. We shall affirm.

Ms. Dearden alleged that she was employed as Director of Training by Liberty Medical Center, Inc. (Liberty), that she has performed all of the conditions of her employment, but that, beginning in the fall of 1985, Liberty's President, William Jews, and its Chief Financial Officer, Jerry Kelly, began making disparaging remarks about her and her performance. Specifically, she claimed that (1) in the fall of 1985, Mr. Jews told Ms. Dearden's immediate supervisor "to get rid of Linda," (2) at an Executive Council meeting later that fall, Messrs. Jews and Kelly commented that "Linda is not a team player, that she was running down the hospital, and that she was making trouble," (3) when, in December,

1985, she asked Mr. Jews "for specifics," he responded, "I don't have to give specifics, just behave," (4) Mr. Kelly at some point falsely accused her of influencing a negative response to a survey on employee attitudes, (5) in the spring and summer of 1986, Mr. Jews questioned her membership on a "transition team" because she was "untrustworthy," and (6) in the summer of 1986, Mr. Jews "told other members of the Administration that the Plaintiff was a bad influence" and that the Executive Council had lost faith in another employee because of her association with Ms. Dearden.

It does not appear from the complaint that Ms. Dearden has been discharged, suspended, or reduced in rank, pay, or other perquisites, and indeed counsel conceded at oral argument that she had not suffered any such detriment. Her claim rests entirely on the comments noted. These comments, she avers, represent a breach of certain personnel policies adopted by Liberty, policies that she asserts form part of her employment agreement. Among them are statements that:

"It is the policy of the Hospital to be patient, fair, impartial and consistent in the administration of the system of progressive discipline...." (§ 121.1)

"Determination of where the blame rests in the past is less important than the collective actions for the positive preventative actions for the future. It is to this end that the Hospital's concern for fair and impartial treatment is directed." (§ 121.23)

"Supervisors will increase the effectiveness of their use of the system of progressive discipline by prompt investigation of a reported infraction, preparation of the appropriate form, presentation of the form, and counseling the employee to prevent subsequent infractions." (§ 107.24)

"It is the policy of the Hospital to:

.     .     .     .     .

Insure fair, just, consistent and equitable treatment in scheduling of work; consideration for promotion or transfer; administration of wage, salary and benefit programs;

implementation of uniform policies; investigation of infractions; administration of discipline when required; provision of a mechanism to address complaints and grievances of any nature; and the speedy investigation and resolution of complaints and grievances." (§§ 47.0–47.2)

Part and parcel of Liberty's overall personnel policies is a specific grievance procedure which, by its terms, applies "to all personnel employed by the Hospital." That procedure calls for an employee having a complaint, within one calendar week from the date of the cause of the complaint, to present it to his or her supervisor. The supervisor is instructed to "conduct an investigation of the facts and circumstances as may be required and [to] attempt to resolve the matter at his/her level." If the complaint is not satisfactorily resolved at that level, the employee may appeal to the department head and thereafter to the "Administration." A grievance not involving discharge would be heard at that level either by the Administrator or by his designee.

Ms. Dearden never invoked this procedure. She defends that failure on the basis that, as her complaint is with Mr. Jews, himself, and with Mr. Kelly, it would be fruitless to seek a resolution with either of them or with any subordinate official. We do not agree.

In *Jenkins v. Schluderberg, Etc. Co.*, 217 Md. 556, 561, 144 A.2d 88 (1958), the Court laid down the general rule that "before an individual employee can maintain a suit [against his employer], he must show that he has exhausted his contractual remedies...." Quoting from *Cone v. Union Oil Co.*, 277 P.2d 464, 468 (Cal.1954), the Court observed:

" 'This rule, which is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to courts * * * is based on a practical approach to the myriad problems, complaints and grievances that arise under a collective bargaining agreement. It makes possible the settlement of such

matters by a simple, expeditious and inexpensive procedure, and by persons who, generally, are intimately familiar therewith. * * * The use of these internal remedies for the adjustment of grievances is designed not only to promote settlement thereof but also to foster more harmonious employee-employer relations.' "

In furtherance of that policy, which, we think pertains whether the contractual remedy is part of a collective bargaining agreement or simply available as part of the company's personnel rules, the Court held, 217 Md., at 561–62, 144 A.2d 88, that "if the employee refuses to take even the initial step of requesting the processing of the grievance, he will not be granted relief in the courts."

The same rule has been adopted by the Supreme Court as an adjunct of Federal labor policy. In *Republic Steel v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965), the Court held that "federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress." A contrary rule, said the Court, "which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it." *Id.*, 653, 85 S.Ct. at 616. See also *Del Costello v. Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983); *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967).

As with any rule, there are some exceptions. In *Vaca v. Sipes, supra,* the Court observed that, where the contractual remedies arise from a collective bargaining agreement, they are "often controlled by the union and the employer ... [and] may well prove unsatisfactory or unworkable for the individual grievant." 386 U.S. at 185, 87 S.Ct. at 914. The problem, in that setting, "is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures." *Id.*

Two such circumstances were identified by the *Vaca* Court: (1) "when the conduct of the employer amounts to a repudiation of those contractual procedures," in which event "the employer is estopped by his own conduct to rely on the unexhausted grievance ... procedures as a defense to the employee's cause of action," and (2) where "the union has sole power under the contract to invoke the higher stages of the grievance procedure" and the employee "has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance." *Id.*

It is at once evident that neither of these exceptions applies here. As noted in *Mabane v. Metal Masters Food Service Equip. Co.*, 541 F.Supp. 981, 989 (D.Md.1982), "[s]ince no grievance was ever filed ... there is no basis to believe that the Company repudiated or would have repudiated the contractual grievance procedure." Compare *Nat. Post Office Mail Handlers v. U.S. Postal Serv.*, 594 F.2d 988 (4th Cir.1979). Nor, of course, is there any union having or exercising the power to prevent Ms. Dearden from using the grievance procedure.

The exception urged by Ms. Dearden is that recognized in *Glover v. St. Louis–S.F.R. Co.*, 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969), excusing the exhaustion of contractual remedies "where the effort to proceed formally with [those] remedies would be wholly futile."

*Glover* involved a complaint by black railroad workers that they were systematically excluded from jobs to which they were entitled. They alleged that they had complained on numerous occasions both to the company and to the union but were consistently rebuffed, that they had been told that "nothing would ever be done for them," that to process a grievance with the railroad without the union's cooperation would be "a useless formality," and that to take the matter to the National Railroad Adjustment Board, composed of railroad and union representatives, "would consume an average time of five years, and would be

completely futile under the instant circumstances where the Company and the [union] are working 'hand-in-glove.' " *Id.* at 326–27, 89 S.Ct. at 549–50. It was in this extreme setting that the Court found that "a formal effort to pursue contractual or administrative remedies would be absolutely futile" and that the "attempt to exhaust contractual remedies," required by *Republic Steel v. Maddox, supra,* 379 U.S. 650, 85 S.Ct. 614, was satisfied by the complainants' "repeated complaints to company and union officials, and no time-consuming formalities should be demanded of them." 393 U.S. at 331, 89 S.Ct. at 552. See also *Smith v. B & O R. Co.,* 473 F.Supp. 572 (D.Md.1979).

■ This "futility" exception is indeed a narrow one that must be pled with precision and established at each level of the grievance mechanism. See *Sosbe v. Delco Electronics,* 830 F.2d 83 (7th Cir.1987). As held in *Transport Wkrs. U. of Amer. v. Amer. Airlines, Inc.,* 413 F.2d 746, 751 (10th Cir.1969), "The futility of the contractual or administrative remedy must clearly appear beyond mere conclusionary language in a complaint, for otherwise the doctrine of exhaustion would be dissipated by mere form and the door to the courts could be opened by prediction rather than by jurisdictional fact." See also *Fulsom v. United–Buckingham Freight Lines, Inc.,* 324 F.Supp. 135, 138–39 (W.D.Mo. 1970).

■ Ms. Dearden's complaint is entirely silent with respect to her non-utilization of the contractual remedy; there is not even "conclusionary language" setting forth a futility excuse. Her *argument,* of course, is that resort to that process would have been futile because her complaint was against Mr. Jews himself. But that does not establish the futility. Her complaint is not only that Mr. Jews made disparaging remarks about her or her performance, but that he refused to provide any details or explanation for his perception. Had she invoked the contractual grievance procedure, one of three things may have resulted: Mr. Jews may have denied harboring any animosity toward Ms. Dearden, and possibly denied making the statements attributed

to him; he may have admitted the animosity and provided an explanation for it; or he may have indeed thwarted all efforts at a resolution and actually made further prosecution of the contractual remedy futile. We are left, of course, only to speculate which of these results would have occurred. We thus have the same situation noted in *Aiello v. Apex Marine Corp.*, 610 F.Supp. 1255, 1266 (E.D.Pa. 1985):

> "Whether or not the exhaustion of a grievance process would be futile is a determination to be made by the courts based on union and company reaction to an employee's attempt to use the grievance process and the validity of the grievance. Since plaintiff in this case made no formal attempt to use the grievance process, it is difficult to determine whether that procedure would have been wholly futile."

(Footnote omitted.)

In summary, on the record before us, we find nothing to excuse Ms. Dearden's failure to invoke the contractual grievance procedure available to her. Her complaint was therefore properly dismissed.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.