665 A.2d 713

Mayner J. POPE

v.

**BOARD OF SCHOOL COMMISSIONERS
OF BALTIMORE CITY, et al.**

No. 1982, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Sept. 29, 1995.

Reconsideration Denied Oct. 31, 1995.

580

582

Mayner J. Pope, Baltimore, for appellant.

Justin J. King, Senior Solicitor (Otho M. Thompson, Deputy City Solicitor and William R. Phelan, Jr., Principal Counsel, on the brief), Baltimore, for appellees.

Argued before WENNER, DAVIS and HOLLANDER, JJ.

DAVIS, Judge.

*Pro Se* appellant Mayner J. Pope appeals from an order of the Circuit Court for Baltimore City that granted appellees' Motion to Dismiss and/or for Summary Judgment and denied appellant's Motion for Summary Judgment. Essentially appellant presents two questions on appeal, which we restate as follows:

I.  Did the trial court err in concluding that appellant's wrongful interference with contract claim failed to state a cause of action because it was asserted against the employees of a party to the contract?

II.  Did the trial court err in applying the doctrine of collateral estoppel to appellant's breach of contract claim with regard to factual findings made in a prior trial, in which appellant was a party?

We answer the first question in the negative, and therefore affirm this part of the circuit court's judgment. We answer the second question in the affirmative. We, however, affirm the judgment of the circuit court, for reasons set forth below.

## FACTS

In her complaint, appellant identifies herself as a tenured special education teacher employed in the Baltimore City school system. From October 1987 to June 1991, appellant worked at Forest Park High School (Forest Park) in Baltimore, Maryland, and was a member of the Baltimore Teacher's Union (BTU). In September 1991, appellant retired from the Baltimore City Public School System on medical disability retirement. The record fairly indicates that appellant was a disgruntled employee.

Appellees in this case are the Board of School Commissioners for Baltimore City (the Board); Dr. Walter Amprey, the Superintendent of Public Instruction; Lester McCrea, the Executive Assistant to the Board; Brenda Conley, the Director of Human Resources for the Board; Jerrelle Francois, the Associate Superintendent for Secondary Schools; and Annette Howard Hall, the principal of Forest Park High School. These individual appellees are hereinafter collectively referred to as the "individual appellees."

At all times relevant to this appeal, an agreement (the Agreement) between the BTU and the Board governed the employment relationship between BTU members, Baltimore City school teachers, and their employer, the Board. In particular, Article IV of the Agreement outlines the procedure by which a teacher may seek relief for a "grievance." The Agreement defines a grievance as a violation of any provision of the Agreement or of the policy of the Board.

To understand properly the procedural posture of this case, it is necessary to explain the Agreement's multi-step grievance resolution procedure. The first step involves an informal meeting between the teacher and school administrator. If the grievance is not resolved at the informal stage, the complaint proceeds up four stages of hearings, or "levels," as referred to by the parties. The "Level I" hearing is conducted before the school administrator. The "Level II" hearing is conducted before the Assistant Superintendent. The "Level III" hearing is conducted before the Superintendent. The "Level IV" hearing is conducted before the Board. Finally, if the matter is still unresolved, the BTU may move for final and binding arbitration. The instant dispute is based on appellant's belief that the manner in which the Board and the individual appellees processed two of appellant's alleged grievances was improper and contrary to the terms of the Agreement.

Due to the state of the record, gleaning the facts surrounding appellant's grievances is difficult. Nonetheless, we are satisfied that the following factual description fairly represents what occurred. During the course of appellant's employment,

Neil Ross, a BTU representative, filed two grievances on appellant's behalf. The first grievance, No. 1175, was filed on June 7, 1991. In this grievance, appellant complained that her 1990–91 annual teacher evaluation was not timely filed. The record is unclear as to whether appellant believes the evaluation should have been submitted to her no later than April 1, 1991 or no later than June 1, 1991. There seems to be agreement, however, that appellant was actually handed the evaluation on June 3, 1991. Apparently, appellant was angered more about the evaluation, which indicated areas in which she needed improvement, than about the delay. Shortly after the filing of grievance No. 1175, appellant was notified that she would be transferred from Forest Park to another school. In an attempt to resist this transfer, a second grievance, No. 1208, was filed on August 30, 1991.

On July 2, 1991 a "Level I" hearing for grievance No. 1175 was held, bypassing the informal step. The school administrator decided to take no action on grievance No. 1175. Appellant, through Neil Ross, requested a "Level II" hearing. No "Level II" hearing was scheduled. Interpreting the Agreement to allow a grievant to appeal to the next level when no hearing is scheduled, Ross requested a "Level III" hearing. Again, no hearing was scheduled for the "Level III" hearing. This caused Ross to request a "Level IV" hearing. Ultimately a "Level IV" hearing was scheduled for December 12, 1991. On appellant's behalf, Ross, however, requested that the "Level IV" hearing be postponed, and a "Level III" hearing be scheduled. A "Level III" hearing was scheduled for February 28, 1992. On that day, however, the Labor Relations Director apparently refused to hear the grievance.

Ross then requested that the "Level IV" hearing be rescheduled. A date for the "Level IV" hearing was finally set for May 29, 1992. The "Level IV" hearing proceeded before a hearing officer as scheduled. On June 26, 1992, the hearing officer recommended that the Board deny appellant's grievance. The Board adopted this recommendation on August 25, 1992, at which time the decision to deny grievance No. 1175 became final.

Appellant requested Ross to pursue the matter to binding arbitration, the final procedural step under the Agreement. The BTU, however, decided against arbitration. Ross notified appellant of the BTU's decision, and instructed appellant that she could appeal the Board's decision to the State Board of Education without the union. It should also be noted that during this time, and right up to the hearing date, school officials offered to change appellant's evaluation to "satisfactory" in order to resolve the entire dispute. Appellant, however, rejected this offer.

Ross pursued grievance No. 1208 directly to the "Level III" stage, apparently because it is common BTU practice to initiate transfer grievances at this level. He indicated that appellant later notified him by letter that she had decided to waive pursuit of grievance No. 1208. Appellant, however, alleges that she only considered dropping this grievance, but made no final decision in this regard. According to Ross, the hearing examiner ruled in the May 29, 1992 hearing that the issue of appellant's transfer was moot because appellant had since retired. In any event, proceedings on grievance No. 1208 never went forward.

As a result of both the disposition of these grievances and appellant's unhappy employment relationship with the Board, appellant filed several lawsuits in federal and state courts. For our purposes here, we are only concerned with two of these lawsuits.

The first suit is *Pope v. Baltimore Teacher's Union*, Case No. 93022046/CL159165 (hereinafter *"Pope v. BTU"*). Appellant filed this suit in the Circuit Court for Baltimore City against the BTU, wherein she alleged that the BTU failed fairly and adequately to represent her with regard to grievances No. 1175 and No. 1208. In *Pope v. BTU*, the trial court (Heller, J.) entered summary judgment against appellant and in favor of the BTU. Judgment was entered against appellant's unfair representation claim for grievance No. 1175 (the evaluation grievance) on what we believe to be two alternative grounds: (1) appellant was required to exhaust her state

administrative remedies under the Education Article of the Maryland Code on the issue of inadequate union representation by appealing to the State Board of Education before seeking judicial relief; and, (2) even if not required to do so, the BTU's representation of appellant was fair and adequate. In reaching this determination, the trial court found as facts that appellant failed to appeal grievance No. 1175 to the State Board and that grievance No. 1175 did not go to binding arbitration. Judgment was entered against appellant's unfair representation claim for grievance No. 1208 (the transfer grievance) on the ground that it had become moot in light of the trial court's findings of fact that appellant voluntarily waived this grievance, and that appellant had since retired. Appellees note in their brief that appellant appealed *Pope v. BTU*, but that this Court affirmed the granting of summary judgment. *Pope v. BTU*, No. 440 (Md.Ct.Spec.App., Sept. Term, Jan. 9, 1995).

The second suit is the instant case, filed on May 27, 1994, subsequent to *Pope v. BTU*. In this case, appellant filed a two-count complaint against appellees. In the first count, appellant sued the individual appellees, alleging that they wrongfully interfered with the Agreement by failing adequately to process the grievances. For example, appellant alleges that the individual appellees failed to schedule hearings, failed to "act in good faith and fair dealings," and failed to keep appellant from peril. In the second count, appellant sues only the Board and Dr. Amprey for breach of the Agreement. In this count, appellant alleged that appellee Amprey failed to schedule a Level III hearing for grievance No. 1208, and that the Board failed to adhere to the procedures outlined in the Agreement. In total, appellant seeks $71,150,000.

Rather than file an answer to this complaint, appellees filed a Motion to Dismiss and/or for Summary Judgment pursuant to MARYLAND RULES 2–322 and 2–501. Appellant filed a response thereto and also filed her own motion for summary judgment. A hearing on the motions was held on October 3, 1994. According to appellant no transcript was made of that hearing. On October 5, 1994, the trial judge issued a written

order granting judgment in favor of appellees on both counts of appellant's complaint, and denying appellant's motion for summary judgment.

On the contractual interference count (count one), the trial court held that the individual appellees were all employees of the Board. The trial court concluded, therefore, that under Maryland law this count must be dismissed because employees of a party to a contract cannot be sued for interference with that contract.

Regarding the breach of contract count (count two), the trial court held that the findings of fact in the prior litigation of *Pope v. BTU* had collateral estoppel effect. According to the trial court, the trial judge in *Pope v. BTU* found that appellant failed to proceed to the final step of binding arbitration for grievance No. 1175 and that appellant failed to proceed with the institution of a Level III hearing for grievance No. 1208. Under the doctrine of collateral estoppel, therefore, the trial court held that these facts were established against appellant for purposes of the instant litigation. Accordingly, the trial judge determined that, under the holding of *Howard County Bd. of Educ. v. Howard County Educ. Ass'n*, 61 Md.App. 631, 487 A.2d 1220 (1985), appellant inappropriately filed suit in circuit court for breach of the Agreement, because appellant failed to exhaust the dispute resolution procedures of the Agreement. Thus, the trial court granted judgment in favor of appellees.

## LEGAL ANALYSIS

### I

Initially, we note that the record is unclear regarding whether the trial judge granted a motion to dismiss or granted a motion for summary judgment. Appellees' motion was couched in the alternative requesting a dismissal "and/or" summary judgment. Additionally, the trial court's written order disposing of appellant's action refers to both types of motions.

**590**

█ The nature of the trial judge's ruling, of course, affects the appropriate standard of review to be followed in this appeal. "When reviewing the grant of either a motion to dismiss or a motion for summary judgment, an appellate court must determine whether the trial court was legally correct. But this determination depends on the nature of the relief given." *Hrehorovich v. Harbor Hospital*, 93 Md.App. 772, 785, 614 A.2d 1021 (1992). In order to follow the correct standard of review, therefore, it is necessary to determine what the trial court actually did. *Hrehorovich* guides us in this regard.

█ We conclude from the record and the trial judge's written order that the trial judge granted a motion to dismiss on the first count for failure to state a cause of action. We reach this conclusion because it is fairly evident from its written order that the trial court decided that, assuming the truth of the facts as alleged in the first count of appellant's complaint, the complaint does not state a claim upon which relief can be granted. *See Hrehorovich*, at 781–83, 614 A.2d 1021 (1992).

█ A fair review of the record and the trial judge's written order indicates that the trial judge granted a motion for summary judgment on the second count. We reach this conclusion because the trial court looked beyond the pleadings to the facts as established in *Pope v. BTU*, and determined that judgment against appellant must be granted. In other words, because it considered matters outside the pleadings, the court was deciding a motion for summary judgment. *Id.*

█ As a result, granting the motion to dismiss count one was proper if the trial court was legally correct when it determined that count one of the complaint did not disclose, on its face, a legally sufficient cause of action. *Id.* at 785, 614 A.2d 1021. *Bramble v. Thompson*, 264 Md. 518, 520, 287 A.2d 265 (1972). Granting summary judgment as to count two was proper only if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.*

*Brady v. Ralph Parsons Co.,* 308 Md. 486, 495, 520 A.2d 717 (1987).

■■ To these principles, we add that an appellate court will affirm a circuit court's judgment on any ground adequately shown by the record, even one upon which the circuit court has not relied or one that the parties have not raised. *Faulkner v. American Cas. Co.,* 85 Md.App. 595, 629, 584 A.2d 734 (1991). Therefore, it is within our province to affirm the trial court if it reached the right result for the wrong reasons. *Id.*

## II

■ Appellant first argues that the trial court should not have dismissed her wrongful interference with contract count. Essentially, appellant insists that the trial judge's conclusion, that under Maryland law an interference with contract claim cannot be maintained against these individual appellees as a result of their status as Board agents, was incorrect.

■ There is no cause of action for interference with a contract when suit is brought against a party to the contract. *Wilmington Trust Co. v. Clark,* 289 Md. 313, 329, 424 A.2d 744 (1981). It is widely recognized that one cannot be liable for tortious interference with his own contract. *Travelers Indem. Co. v. Merling,* 326 Md. 329, 343, 605 A.2d 83 (1992). The reasoning behind this rule is that a suit for breach of contract is the appropriate remedy. *Wilmington Trust Co.,* at 329–30, 424 A.2d 744.

■ These principles apply equally to employees of parties to contracts. "Thus, when an employee acts within the scope of her employment, or as an agent of her employer, she cannot be held liable for interfering with the contract, business relationships, or economic relationships, between the employer and another." *Bleich v. Florence Crittenton Serv.,* 98 Md.App. 123, 147, 632 A.2d 463 (1993). Indeed, in order to sustain such a claim, there must be an allegation that the employee in question somehow acted maliciously for his own motives and beyond the scope of his authority without the

intent to further the interests of the employer. *Id.* at 147–48, 632 A.2d 463.

There can be no doubt that the individual appellees were agents of the Board, a party to the Agreement. In fact, appellant expressly alleged the same in her complaint. In support of our conclusion, as appellees correctly point out in their brief, the Baltimore City Charter provides that the Board has the power to appoint and remove the Board Superintendent and Assistant Superintendents, and to confirm or reject appointments of principals, teachers, supervisors, directors and other professional employees. BALTIMORE CITY CHARTER, Art. VII, § 58(b) (1993 Repl.Vol.). As a matter of law, therefore, the individual appellees are agents of the Board.

Nonetheless, appellant argues that the individual appellees are not Board employees because they are not listed as such in the Agreement's definition of "Employee." This argument is without merit. Article I, § 1.2 of the Agreement defines "Employee" as "all classroom teachers, counselors, librarians, psychologists, social workers, home teachers, hospital teachers, department heads, master teachers, educational associates, speech/language pathologists and art, music and physical education resource teachers." The term "Employee" as used in the Agreement obviously relates to the various classes of BTU members whose employment relationship is governed by the Agreement with the Board. This, however, does not mean that the individual appellees are therefore not agents of the Board. After all, the Agreement is a collective bargaining agreement between management and a union for the benefit of union member employees. Therefore, we would not expect the definition of "employee" to include members of management.

Because the individual appellees were Board agents, appellant failed to state a legal cause of action, absent an allegation in her complaint that the individual appellees somehow maliciously acted for their own motives outside of the scope of their authority and without regard for the interests of their

employer. A plain reading of count one of appellant's complaint alleges no such conduct. Although appellant sued the individual appellees "individually and in [their] official capacity," and alleged that they failed to act in "good faith and fair dealings, and ... keep [her] from peril," under the legal principles above, this falls woefully short of what is required to state properly a claim for wrongful interference with a contract against an employee of a party to the contract.

As a result, the trial court was legally correct in concluding that the wrongful interference with contract count failed to state a claim upon which relief could be granted. Accordingly, the dismissal of this count is affirmed.

Before turning to the next issue, we note, for the benefit of appellant, that it was not inappropriate or unfair for appellees to cite cases in their brief which held that appellant was required to allege that the individual appellees maliciously acted for their own motives outside of the scope of their authority and without regard for the interests of their employer. We reiterate that our review here is to determine whether the trial court was "legally correct" in dismissing appellant's wrongful interference with contract claim. Citing the law to this Court for the purpose of explaining why the trial court was legally correct cannot, therefore, constitute an unfair surprise. Simply put, it was appellant's job to make sure her complaint stated a legal cause of action.

### III

Appellant next argues that the trial court erred in applying the doctrine of collateral estoppel to the second count of her complaint. Appellant asserts that the factual findings in *Pope v. BTU*, that appellant did not arbitrate grievance No. 1175 and did not proceed with grievance No. 1208, should not have operated against her in the court below. Although we agree with appellant in this regard, we are compelled to affirm the grant of summary judgment against her on this count.

Traditionally, under the doctrine of collateral estoppel, in a second suit between the same parties, even if the cause of

action is different, any determination of fact actually litigated in the first case is conclusive in the second case. *Mackall v. Zayre Corp.*, 293 Md. 221, 228, 443 A.2d 98 (1982); *MPC, Inc. v. Kenny*, 279 Md. 29, 32, 367 A.2d 486 (1977). The rationale is that, as a matter of general policy, the law ordinarily precludes re-litigation of matters already fairly and fully litigated. *Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 547, 555 A.2d 502 (1989). This policy avoids multiple lawsuits, conserves judicial resources, and fosters reliance on judicial decisions by minimizing the chance of inconsistent decisions. *Id.*

Under the modern approach to collateral estoppel, the requirement that the parties be the "same" no longer exists. A party to an action, therefore, may be conclusively bound by a stranger to that action in a subsequent litigation with respect to facts and issues actually determined in the prior action. *MPC, Inc.*, at 35, 367 A.2d 486. Essentially, collateral estoppel involves a three-part analysis:

1. Was the issue or fact decided in the prior litigation identical with the one presented in the subsequent litigation?

2. Was there a final judgment on the merits in the prior litigation?

3. Was the party against whom collateral estoppel is asserted a party or in privity with a party to the prior litigation?

*Id.* (quoting *Bernhard v. Bank of America*, 19 Cal.2d 807, 122 P.2d 892, 895 (1942) (Traynor, J.)).

In addition, the fact actually litigated in the prior action must have been "essential" to the judgment in that action. *Graham*, at 550–52, 555 A.2d 502. To this end, it becomes necessary to determine whether judgment in the prior action could have been rendered without making the factual determinations at issue. *Id.* Moreover, the rule of collateral estoppel will not apply where review of the judgment in the initial action was not available to the party against

whom collateral estoppel is now sought. *Id.* at 552, 555 A.2d 502.

Before applying this analysis, we must first determine whether the trial judge was correct to conclude that *Pope v. BTU* actually established that appellant failed to proceed with the final step of binding arbitration for grievance No. 1175, and failed to proceed with the institution of step 3 for grievance No. 1208. A review of the February 1, 1994 Memorandum and Opinion issued on the record by the trial judge in *Pope v. BTU,* made part of the record in this appeal, convinces us that the trial judge did make these specific factual findings. We conclude, therefore, that the trial judge was correct in determining that these facts were previously established against appellant in *Pope v. BTU.*

Accordingly, we now turn to the first part of the collateral estoppel analysis. Those facts decided in the prior litigation were indeed identical to those before the trial court in this subsequent litigation. It is plain from the trial court's written order that it expressly and specifically relied on these very findings in disposing of count two of appellant's complaint.

Next, *Pope v. BTU* ended in a final judgment on the merits. In the February 1, 1994 Memorandum and Opinion issued in *Pope v. BTU,* the trial judge granted summary judgment in favor of the BTU and denied summary judgment in favor of appellant. Summary judgment is considered a final judgment on the merits for purposes of collateral estoppel analysis. *Maryland Auto. Ins. Fund v. Soffas,* 89 Md.App. 663, 670–71, 599 A.2d 837 (1991) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. d (1982)). Additionally, it is clear that appellant was a party to the prior litigation and is the party against whom collateral estoppel is asserted in this subsequent litigation.

Lastly, these findings must be "essential" to the judgment in the prior action. After an exhaustive review of the February 1, 1994 Memorandum and Opinion in *Pope v. BTU,* we conclude that the factual findings related to grievances No.

1175 and No. 1208 were not "essential" for a judgment in that case. We explain.

The finding related to grievance No. 1175 to which the trial court gave preclusive effect was that appellant never took this grievance to the next procedural step—binding arbitration. This specific finding was not essential to judgment against appellant's unfair representation claim on the first ground in *Pope v. BTU,* i.e., that appellant was required to exhaust her state administrative remedies under the Education Article of the Maryland Code on the issue of inadequate union representation by appealing to the State Board of Education before seeking judicial relief. Clearly, the trial court's judgment in *Pope v. BTU* on this ground turned solely on appellant's failure to go to the State Board as required by State law, not on her failure to go to binding arbitration under the terms of the Agreement. Stated differently, the trial court could have rendered judgment here without ever finding that grievance No. 1175 was not arbitrated.

On the other hand, the finding in *Pope v. BTU* that appellant did not pursue No. 1175 to binding arbitration was essential to judgment against appellant's unfair representation claim on the second ground, i.e., that the BTU's representation of appellant was fair and adequate in the first place. In this regard, the trial judge in *Pope v. BTU* specifically held that the BTU did not inadequately represent appellant by refusing to arbitrate grievance No. 1175. The trial judge held that, under the legal standards governing a union's representation of its member, the BTU acted appropriately on behalf of appellant. Among other things, the trial court took into consideration the merit of appellant's grievance, the settlement offers that the BTU obtained from school officials, and the cost and burden of proceeding to binding arbitration. In order, therefore, for the trial court to conclude that the BTU did not inadequately represent appellant with regard to grievance No. 1175 by failing to arbitrate, it was essential for the trial court to determine in the first instance that grievance No. 1175 was not arbitrated.

The bottom line here, however, is that the failure to arbitrate must have been essential to both grounds. In other words, judgment in the prior action could have been rendered solely on the ground that appellant did not appeal to the State Board, without making the factual determination that appellant did not arbitrate grievance No. 1175. This finding was not essential under collateral estoppel analysis and, therefore, could not operate against appellant below. *See Graham,* at 550–52, 555 A.2d 502.

The finding related to grievance No. 1208 to which the trial court below gave preclusive effect was that appellant failed to proceed with grievance No. 1208. In *Pope v. BTU,* judgment was entered against appellant's unfair representation claim for grievance No. 1208 on the ground that it had become moot in light of this finding and the finding that appellant had since retired. The finding that appellant did not proceed with grievance No. 1208 was not essential to the judgment in *Pope v. BTU* because the trial court could have found that grievance No. 1208 was moot solely on the ground that appellant retired. Thus, the finding that appellant failed to proceed with this grievance does not operate against her under the doctrine of collateral estoppel.

Although we hold that the trial court should not have given preclusive effect to the above-discussed findings of fact, we do point out to appellant that the trial court's interpretation of Maryland law was correct. In its order granting summary judgment against appellant on count two, the trial court, citing *Howard County Bd. of Educ. v. Howard County Educ. Ass'n.,* 61 Md.App. 631, 487 A.2d 1220 (1985), stated that Maryland law holds that where an agreement provides for a grievance resolution procedure, that procedure must be followed and institution of a lawsuit is inappropriate. *Howard County Bd. of Educ. v. Howard County Educ. Ass'n* arguably stands for this proposition. *Id.* at 639–40, 487 A.2d 1220. It is well recognized that before an individual employee may sue his employer in court, he must show that he exhausted contractual remedies. *Dearden v. Liberty Medical Ctr.,* 75 Md.

App. 528, 531, 542 A.2d 383 (1988). This rule is analogous to the rule requiring exhaustion of administrative remedies in the administrative law area. *Id.* Exhaustion of contractual remedies applies equally to cases where the procedures are provided by a collective bargaining agreement, or by an employer's rules of procedure. *Id.* at 532, 542 A.2d 383.

There are, however, the following exceptions to this rule: (1) where the employer's conduct amounts to a "repudiation" of those contractual procedures; (2) where the union has the "sole power" to invoke the higher levels of appeal and the union has "wrongfully" prevented the employee from availing herself to that process; and (3) in the "extreme setting," where the employee pleads with "precision" that it would have been "absolutely futile" to exhaust the procedural remedies. *Id.* at 533–34, 542 A.2d 383 (citing *Glover v. St. Louis-S.F.R. Co.,* 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969); *Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *Sosbe v. Delco Elec.,* 830 F.2d 83 (7th Cir.1987)). Even though appellant did not argue below that these exceptions apply, we shall address them in light of our mandate.

Although appellant alleges that the school system failed to schedule certain hearings, we do not view this to be a "repudiation" of the Agreement's grievance procedures. There is substantial evidence on the record that school system officials engaged in meaningful and good faith settlement negotiations with appellant. Appellant eventually participated in a full evidentiary hearing on grievance No. 1175. The school system could not have repudiated the grievance procedures for grievance No. 1208 because appellant evidently terminated those procedures on her own initiative. In addition, the procedures for grievance No. 1208 became moot as a result of appellant's disability retirement.

The second exception is also inapplicable. Although it appears under the Agreement that the union had the sole power to invoke the binding arbitration level, the BTU did not "wrongfully" prevent appellant from availing herself of that process. Appellant has failed to demonstrate even a remote

chance of her success at the arbitration level on grievance No. 1175. Given the nature of grievance No. 1175, the rejected settlement offers associated therewith, and the costs and burdens to the BTU, the BTU's decision to pursue grievance No. 1175 no further is wholly reasonable. Significantly, the BTU notified appellant that she could appeal to the State Board, but appellant took no such action. Likewise, the BTU did not "wrongfully" prevent appellant from pursuing grievance No. 1208 because appellant waived this grievance, and in any event, No. 1208 was moot due to appellant's disability retirement.

The third exception to the exhaustion of contractual procedures rule is equally useless to appellant. Nowhere in her complaint for breach of contract did appellant plead "with precision" or otherwise that it would have been "absolutely futile" to exhaust the procedural remedies.

In light of the foregoing, we hold that the trial court should not have given collateral estoppel effect to the factual findings in *Pope v. BTU* that appellant failed to pursue grievance No. 1175 to arbitration and that appellant failed to proceed with grievance No. 1208. We will not, however, reverse the trial court and remand the case for further proceedings, because this Court may affirm a circuit court's judgment on any ground adequately shown by the record, even one upon which the circuit court has not relied. *Faulkner,* 85 Md.App. at 629, 584 A.2d 734. Independent of the factual findings in *Pope v. BTU,* a review of the record in the instant case discloses that there is no genuine dispute that grievance No. 1175 was not arbitrated and that grievance No. 1208 became moot as a result of appellant's retirement. Therefore, it would be a waste of judicial resources and time to remand the case to the trial court in order to reach the same result initially obtained by the trial judge's grant of appellee's motion. Accordingly, we affirm the trial court for reaching the right result, though for the wrong reasons. *Id.*

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**