NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2407
_____

INTERVEST NATIONAL BANK

v.

ROBERT WELCH;
ROBERT B. WELCH, JR.,
Appellants

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-10-cv-03119)
District Judge: Honorable Timothy J. Savage

_____

Submitted Under Third Circuit LAR 34.1(a)
July 9, 2012

Before:  RENDELL, SMITH and BARRY, Circuit Judges

(Opinion Filed: August 8, 2012)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

      In this case, a bank sued two individuals to enforce a guaranty agreement and

moved for summary judgment.  The District Court granted summary judgment,

concluding that the defendants were collaterally estopped from challenging the validity

and amount of the underlying debt, and that the guaranty was unambiguous and enforceable. We will affirm the District Court's judgment.

## I. Background

In June 2005, Fron-DJW, L.P. ("Fron L.P."), a Pennsylvania limited partnership, borrowed $4.21 million dollars from Intervest National Bank in order to acquire two parcels of land in Maryland for development. Fron-DJW GP, LLC ("Fron GP") was Fron L.P.'s general partner. According to its organizational documents, Fron GP was managed by Robert B. Welch. Fron L.P. also had limited partners.

As part of the loan, Fron L.P. executed a promissory note and mortgaged the properties to Intervest. Earlier drafts of the promissory note mistakenly listed the promisor as Fron-DJW, *LLC*, which is a non-existent entity, rather than Fron *L.P.*, the actual promisor. The error was corrected in many places, but the signature block of the signed promissory note mistakenly identified the maker of the note as Fron-DJW, *LLC*.

In August 2005, Robert B. Welch and his father Robert G. Welch executed a guaranty agreement on the loan.

The property development plan failed and Fron L.P. defaulted on the loan. Intervest filed an action in strict foreclosure in the state circuit court for Cecil County, Maryland in June 2008, naming Fron L.P. as defendant. The Welches contend that at some point thereafter, Robert G. Welch took over management of Fron GP from Robert B. Welch. Fron L.P. appeared at the foreclosure action and, along with Intervest, filed a joint motion for an order directing sale of the properties. In that joint motion, Fron L.P.

acknowledged that it executed a note and mortgage in favor of Intervest, that it defaulted, and that it consented to a judicial sale of the properties.

The properties were sold at auction on September 29, 2009. Intervest, the only bidder, purchased the properties for $500,000. The record shows that the properties had been appraised at various times between 2005 and 2009 from $2.1 million to $7.6 million. On April 20, 2010, the Maryland court entered an order ratifying and confirming the foreclosure sale.

On June 15, 2010, Intervest demanded that the Welches, pursuant to the August 2005 guaranty agreement, pay 50% of Fron L.P.'s then outstanding indebtedness to Intervest.

On November 22, 2010, Fron L.P. filed exceptions to an auditor's report in the Maryland case, arguing, *inter alia*, that the sale price was artificially low and thus should not be used to determine Fron L.P.'s remaining indebtedness to Intervest. In a memorandum and order dated February 18, 2011, the Maryland state court rejected that argument, saying that it should have been made before the foreclosure sale was ratified and that Maryland courts rarely grant such exceptions.

When the Welches failed to make payment under the guaranty agreement, Intervest sued them in Federal District Court for the Eastern District of Pennsylvania. Intervest moved for summary judgment, arguing that the validity of the promissory note and the amount owed thereunder were established in the Maryland lawsuit and that the Welches were collaterally estopped from challenging those determinations. Furthermore,

it argued that there was no genuine issue regarding the validity of the guaranty or the amount owed thereunder.

The Welches contested summary judgment. They argued that they could not be bound by the Maryland court's determination of the validity of the note and the amount owed because they were not parties to, nor in privity with, the defendant in the Maryland case. They argued that the note is unenforceable because of Intervest's unilateral drafting mistake: listing Fron-DJW, LLC in the note's signature block, rather than Fron L.P. Furthermore, the Welches argued that an ambiguity in the guaranty agreement—as to whether they guaranteed all of Fron L.P.'s debts or only 50% of them—created a genuine dispute of material fact, precluding a grant of summary judgment.

The District Court rejected these arguments and granted Intervest's motion for summary judgment. Although noting that the Welches were not themselves parties to the Maryland court proceeding, the District Court held that their relationship with Fron L.P. in the Maryland proceeding was sufficiently close that they are bound by the Maryland judgment. Furthermore, the District Court held that the error in the promissory note— listing Fron-DJW, LLC in the signature block instead of Fron L.P.—was a mutual mistake that could be reformed by the court. Therefore, it held as a matter of law that the promissory note was valid. In addition, the District Court found that the guaranty agreement unambiguously required the Welches to personally guarantee 50% of Fron L.P.'s indebtedness. Thus finding no dispute over any material fact, the District Court entered an order against the Welches for $2,260,951.44.

4

## II. Discussion[1]

### A.

The Welches argue that the District Court erred in finding that they could be bound by the decision in the Maryland foreclosure action. This is an issue of collateral estoppel, also known as issue preclusion. Maryland law determines the preclusive weight of the prior Maryland court decision. *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986) ("[U]nder the Full Faith and Credit Act [28 U.S.C. § 1738] a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give.").

Under Maryland law, four elements must exist for collateral estoppel to apply: (1) the fact or issue decided in the prior litigation is identical to the one presented in the subsequent litigation; (2) the fact or issue decided was essential to the prior judgment; (3) there was a final judgment on the merits; and (4) the party against whom collateral estoppel is asserted was a party or was in privity with a party to the prior litigation. *Pope v. Bd. of Sch. Comm'rs*, 665 A.2d 713, 721 (Md. Ct. Spec. App. 1995). Only the fourth element, privity, is at issue here. In Maryland, a person is in privity for preclusion purposes if he "ha[d] a direct interest in the subject matter of the [earlier] suit, and ha[d] a right to control the proceedings, make defense, examine the witnesses, and appeal if an appeal lies." *Ugast v. La Fontaine*, 55 A.2d 705, 708 (Md. 1947).

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment. *Reichley v. Pa. Dep't of Agric.*, 427 F.3d 236, 244 (3d Cir. 2005).

The record demonstrates that both Robert B. Welch and Robert G. Welch were in privity with Fron L.P. and therefore were rightly precluded from relitigating issues resolved against Fron L.P. in the earlier Maryland foreclosure action. Robert G. Welch does not dispute that he controlled Fron L.P.'s defense in the Maryland lawsuit. His argument that his personal interests as guarantor did not align with Fron L.P.'s interests is insupportable. Robert B. Welch, as the manager of Fron GP—which was the general partner of Fron L.P.—had the *right* to control the earlier Maryland action. That fact, along with his direct interest in the earlier proceeding, suffices to establish privity under Maryland law. *Ugast*, 55 A.2d at 708. Furthermore, although there are constitutional limits on the application of state privity rules to preclude litigants from their day in court, *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 798 (1996), we see nothing about the application of issue preclusion to these parties that violates their constitutional right to due process of law.

**B.**

The Welches also argue that the misidentification of the borrower in the final draft of the promissory note was Intervest's unilateral error, which cannot, under Maryland law, be judicially reformed. We disagree. It was the clear intention of both Fron L.P. and Intervest that Intervest would loan money to Fron L.P. in exchange for Fron L.P.'s promises to Intervest. All the other closing documents refer to Fron L.P., not Fron-DJW, LLC, and the actions of Fron L.P. and the Welches further confirm the parties' mutual intent. The District Court correctly identified this as a mutual mistake that can be corrected by the court. *See Hoffman v. Chapman*, 34 A.2d 438, 439 (Md. 1943) ("It is a

6

settled principle that a court of equity will reform a written instrument to make it conform to the real intention of the parties, when the evidence is so clear, strong and convincing as to leave no reasonable doubt that a mutual mistake was made in the instrument contrary to their agreement.").

C.

The Welches further argue that there is an ambiguity in the guaranty agreement as to how much of Fron L.P.'s debt they were guaranteeing, thus nullifying their obligation altogether. While paragraph 1 of the guaranty agreement says that the Welches guarantee "[u]p to 50% of the obligations of Borrower," paragraph 2 says that if the borrower is in default of its obligations, the Welches will assume "all responsibility for Borrower's Obligations." (722a-723a.) They say that a reasonable finder of fact could conclude that this ambiguity renders the guaranty agreement unenforceable and that summary judgment was thus inappropriate. Additionally, they argue that the term "Borrower's Obligations," which was not defined in the guaranty agreement, could be interpreted by a reasonable jury as referring only to Fron L.P.'s obligation to pay insurance premiums and taxes on the property, not to repay the loan itself. Again, we disagree.

It is absurd to take a purported uncertainty about whether the Welches guaranteed 50% of Fron L.P.'s debt or 100% and turn that into a jury issue as to whether the Welches guaranteed *any* of the debt. It is also unreasonable to interpret the term "Borrower's Obligations" to exclude the obligation to repay the debt, which is the primary obligation of any borrower. There is no genuine dispute about the enforceability of the guaranty

7

agreement. The District Court correctly construed it as a matter of law and properly granted summary judgment to Intervest.

For these reasons, the District Court did not err in granting summary judgment to Intervest. We will therefore affirm.