Solomon I. HEJIRIKA, et al.

v.

**MARYLAND DIVISION OF CORRECTION, et al.**

No. CIV. JFM–02–3512.

United States District Court, D. Maryland.

May 22, 2003.

Brian Keith McDaniel, Washington, DC, for Plaintiffs.

Michael O'Connor Doyle, State of Maryland Office of the Attorney General Public Safety and Correctional Services, Baltimore, MD, for Defendants.

## MEMORANDUM

MOTZ, District Judge.

Solomon I. Hejirika and Michael B. Ojo have brought suit against the Maryland Division of Corrections ("MDOC"), the Metropolitan Transition Center ("MTC") (an institution of the MDOC), two Wardens of the MTC (Eugene Nuth and Patricia Allen), and the Commissioner of the MDOC (William W. Sondervan). Plaintiffs' complaint contains seven separate counts arising out of alleged instances of racial harassment, retaliation, and discrimination based on national origin.[1] Defendants have moved to dismiss six counts entirely and one count in part.

For the reasons detailed below: (1) Counts V (breach of contract), VI (negligent hiring), and VII (negligent supervision) and the claims against MDOC/MTC and the individuals in their official capacities in Counts II, III, and IV are dismissed without leave to amend; (2) Counts II (civil conspiracy) and III (tortious interference with prospective advantage) are dismissed with leave to amend; (3) Count IV (intentional infliction of emotional distress) is dismissed without leave to amend; and (4) Count I will not be dismissed to the extent it alleges a failure to promote due to discrimination based on national origin under Title VII.[2] To the extent Count I alleges harassment or a hostile work environment founded on plaintiffs' national origin, it will be dismissed without leave to amend.

### I.

Plaintiff Hejirika, a naturalized U.S. citizen of "African national origin," was hired by the MTC as a Correctional Officer Lieutenant in 1991.[3] (Compl.¶¶ 7–8.) Throughout his employment, he was allegedly subjected to harassment based upon his "native origin." (*Id.*) In 1995, for personal reasons, he requested and was granted a voluntary demotion to the position of Case Management Specialist. (*Id.* ¶ 9.) Hejirika requested reinstatement as Lieutenant in August 1996. (*Id.* ¶ 10.) In September 1996, his name was placed on a list of those eligible to fill an available position as a Lieutenant without taking the requisite exam. He was to remain on this list until September 1998, at which time he would be required to take the exam to

---

**1.** While listing various statutes as the basis for relief at the beginning of their complaint, plaintiffs never make clear which statutes apply to which counts. To each count, I have endeavored to apply the relevant law that is consistent with their allegations.

**2.** Defendants have not asserted that plaintiffs failed to state a claim for failure to promote.

**3.** My recitation of the facts is based upon the allegations in the complaint.

again be eligible to fill a Lieutenant position. (*Id.* ¶ 11.)

Though five to eight others were promoted to Lieutenant during the following two years, Hejirika was not. Between 1998 and 2001, Hejirika took the examination three times and received a score of "Best Qualified." (*Id.* ¶ 13.) He remained in his position of Case Management Specialist and received various accolades for his performance, including four commendations as "employee of the year" from 1997–2000. (*Id.* ¶ 15.) Hejirika was never promoted to the position of Lieutenant.

Sometime in 1999, what is described as "a racially discriminatory questionnaire directed toward individuals of African descent" was circulated to employees at another facility by an "unknown Major." (*Id.* ¶¶ 16, 27.) The questionnaire allegedly inquired how those of American descent, whether Caucasian–American or African–American, would respond to having a superior of African descent and included questions regarding possible communication problems due to accents possessed by those of African descent. (Pl.'s Opp'n at 13.) Copies of the questionnaire found their way to the MTC. At rollcall, the contents of the questionnaire were disavowed and the questionnaire was later denounced by the Deputy Commissioner in a written memorandum. (*Id.* ¶ 16.)

Plaintiff Michael B. Ojo, also a naturalized U.S. citizen of "African national origin," was hired as a Correctional Officer Lieutenant in 1993 and was assigned to the MTC in 1997. (*Id.* ¶¶ 2, 18, 19). In 1999,

he was accused of sexual misconduct by a coworker. (*Id.* ¶ 20.) This led to his termination by Warden Eugene Nuth pursuant to the Division's zero tolerance policy regarding sexual harassment. (*Id.* ¶ 21.) Ojo appealed the termination and was reinstated with full back pay and benefits. (*Id.* ¶ 22.) Ojo, however, was not immediately returned to his prior, more desirable shift. He requested to be placed back on his former shift, but was told there were no openings during that time block. (*Id.* ¶ 23.)

Ojo also applied for promotion several times during his tenure with the department and has not received a promotion since 1993 despite being ranked "best qualified" all the times he has taken the requisite examination. (*Id.* ¶¶ 25, 26.) Ojo was eventually reassigned to his former shift after participating in a promotion interview (though he did not receive the promotion). (*Id.* ¶ 24.)

Both plaintiffs filed charges of discrimination with EEOC in the summer of 2002. (*Id.* ¶ 27.) Hejirika's EEOC complaint identifies national origin as the basis for the discrimination and details some of the comments that led Hejirika to believe he was passed over for promotion based on his national origin. (Pl.'s Opp'n, Ex. 1.) Ojo's EEOC complaint identifies both retaliation and national origin as the basis for the discrimination against him.[4] (Pl.'s Opp'n, Ex. 2.) Both plaintiffs received "right to sue" letters by the end of summer, and this action was instituted.[5] (Compl. ¶ 27.)

---

4. Though supported by some factual allegations, plaintiff Ojo has not asserted a substantive count of the complaint alleging retaliatory failure to promote. Plaintiff will be granted leave to amend his complaint to include such a count. However, I am not addressing a claim based on retaliation because

it was not specifically alleged in the complaint.

5. Count I alleges that MDOC/MTC and the named individuals are liable for "racial discrimination." (Compl. ¶¶ 27–31.) Count II alleges that MDOC/MTC and the named individuals are liable for civil conspiracy. (*Id.* ¶¶ 32–33.) Count III alleges that MDOC/MTC

For relief, plaintiffs seek: (1) declaratory and equitable relief under 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1981a; (2) compensatory and punitive damages under 42 U.S.C. §§ 1981 and 1983; (3) court costs and attorneys fees under 42 U.S.C. §§ 1988(a)-(b) and 2000e–5(k) and Md. R. 2–603; and (4) additional relief under Md. Ann.Code art. 49B, §§ 11(e) and 16 and Maryland common law.

## II.

### A.

■ The Eleventh Amendment prohibits private parties from bringing suit against nonconsenting states in federal court. *Bd. of Trs. of Univ. of Alabama v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). State officials being sued in their official capacity and state agencies are also immune from suit absent state consent. *See Lizzi v. Alexander,* 255 F.3d 128, 136 (4th Cir.2001). Maryland has consented to suit in Maryland state court. *See* Md.Code Ann., State Gov't § 12–104 (waiving state immunity for tort actions in state court); *id.* § 12–201 (waiving state immunity for contract actions in state court). It has not, however, consented to suit in federal court. *See id.* §§ 12–104, 12–201; *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 397 (4th Cir.1990).

■ MTC is an institution of the MDOC. The MDOC is a part of the Maryland Department of Public Safety and Correctional Services ("DPSCS"). The DPSCS is a principal executive agency of the State of Maryland. Md.Code Ann., State Gov't § 8–201(b)(14). Therefore, MTC/MDOC and MTC/MDOC agents acting in their official capacity enjoy Eleventh Amendment immunity. As a result, I will dismiss the following claims without leave to amend: (1) all claims in Counts II, III, and IV against MTC/MDOC and the individuals in their official capacity[6]; (2) Counts V, VI, and VII, which assert claims only against MTC or MDOC; and (3) all claims under § 1983 in Count I against MTC/MDOC and the individuals in their official capacities.

### B.

Count I, though subcaptioned a claim for racial discrimination, in fact states a claim for discrimination based upon national origin. While not contesting the sufficiency of the allegations claiming discriminatory failure to promote based upon national origin, defendants argue that plaintiffs are barred from asserting a harassment or hostile work environment claim under Title VII because they have not exhausted their administrative remedies with respect to such a claim. Defendants contend that the

and the individual officers tortiously interfered with plaintiffs' employment relationships with MTC. (*Id.* ¶ 29.) Count IV alleges that defendants are liable for intentional infliction of emotional distress. (*Id.* ¶ 35.) Count V alleges that MDOC/MTC breached its employment contract with plaintiff. (*Id.* ¶ 36.) Count VI alleges that MDOC/MTC negligently hired Commissioner Sondervan, Wardens Nuth and Allen, and "other high ranking officers." (*Id.* ¶¶ 37–38.) Count VII alleges that MDOC/MTC negligently supervised those same individuals. (*Id.* ¶¶ 39–41.)

**6.** Plaintiffs may be able to establish a claim for prospective injunctive relief against the individuals in their official capacities, but have not requested such relief in their complaint. A claim requesting such relief would not be barred by the Eleventh Amendment. *See Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Should plaintiffs wish to obtain injunctive relief against the individuals in their official capacities, they will need to amend their complaint to reflect that goal.

charges filed with the EEOC did not include allegations of harassment or a hostile work environment and that a reasonable investigation triggered by these charges would not encompass such claims. I agree.

Title VII establishes a multi-step administrative procedure an employee must follow before filing a lawsuit in federal court.[7] *See* 42 U.S.C. § 2000e–5(b). These administrative procedures promote the important purposes of permitting prompt investigation, possible conciliation, and voluntary resolution of discrimination complaints. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 180–81, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The allegations contained in an EEOC administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.")

■ Both plaintiffs filed charges with the EEOC alleging failure to promote due to discrimination based on their national origin. (Pl.'s Opp'n, Ex. 1 & 2.) These charges do not mention instances of harassment or describe a hostile work environment, and instead, quite simply and clearly allege a discriminatory failure to promote. (*See id.*) A reasonable investigation triggered by these charges would not encompass whether a hostile work environment existed. Thus, plaintiffs' claim of harassment or a hostile work environment under Title VII will be dismissed without leave to amend because plaintiffs did not include such allegations in their charges with the EEOC and failed to exhaust administrative remedies with respect to this claim.[8] *See Evans*, 80 F.3d at 963 (holding plaintiff's claim of sexual harassment was beyond the scope of the administrative charge where plaintiff had charged only discriminatory failure to promote); *Pritchett v. Gen. Motors Corp.*, 650 F.Supp. 758, 761–62 (D.Md.1986). Plaintiffs' claim for failure to promote due to their national origin, however, survives.

### C.

Count II of the complaint alleges that defendants "did conspire to deprive the Plaintiffs of an equal opportunity for employment and any attended advancement; and did conspire to deliberately promote officers who were less qualified than the Plaintiffs." (Compl.¶ 32.) I will dismiss Count II with leave to amend because, as currently alleged, plaintiff has failed to state a claim for civil conspiracy under either state or federal law.

■ Maryland does not recognize an independent cause of action for civil conspiracy. *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 189,

---

7. I have analyzed plaintiffs' hostile work enviroment claim under Title VII because Title VII provides the most suitable framework in which to analyze such a claim. *See supra* note 1. If plaintiffs amend their complaint to clearly assert a claim for a hostile work enviroment under § 1983, the MTC/MDOC and the individuals in their official capacities would be entitled to Eleventh Amendment immunity. *See supra* section II.A.

8. Based on the allegations in the complaint, it appears that any attempt to exhaust such remedies and bring this claim again would now be time-barred.

665 A.2d 1038, 1044–45 (1995). Rather, a "defendant's liability for civil conspiracy depends entirely on its liability for a substantive tort." *Fare Deals, Ltd. v. World Choice Travel.Com, Inc.*, 180 F.Supp.2d 678, 692 (D.Md.2001). Because, as discussed below, plaintiffs have failed to state a claim for any substantive torts, their state law claim for civil conspiracy must fail.

■ Plaintiffs have also failed to allege facts sufficient to state a claim under 42 U.S.C. § 1985(3). To prove a civil conspiracy under § 1985(3), a plaintiff must show:

(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir.1995). Moreover, a plaintiff must show "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Id.* at 1377.

■ In their complaint, plaintiffs merely allege various instances of discrimination and then, in a conclusory fashion, state a conspiracy claim. Nowhere in their complaint do plaintiffs allege facts that show defendants agreed to violate their constitutional rights. In fact, plaintiffs fail to allege facts showing that the instances of discrimination are connected.[9] As a result, plaintiff has failed to state a claim under

§ 1985(3). *See, e.g., Talley v. Farrell*, 156 F.Supp.2d 534, 546 (D.Md.2001).

**D.**

In Count III, plaintiffs allege that defendants tortiously interfered with their employment contract with MTC/MDOC. (Compl.¶ 29.) I will dismiss Count III with leave to amend because, as currently alleged, plaintiff has failed to state a claim for tortious interference.

■ Recovery for intentional interference with an economic relationship is barred when the plaintiff and defendant are both parties to the economic relationship. *Lewis v. Forest Pharm., Inc.*, 217 F.Supp.2d 638, 660 (D.Md.2002). A plaintiff also cannot recover against a defendant's employee acting within the scope of his or her employment. *Id.; see also Bleich v. Florence Crittenton Servs. of Baltimore, Inc.*, 98 Md.App. 123, 147, 632 A.2d 463, 475 (1993). As a result, an employee suing a fellow employee for tortious interference must allege that the defendant employee "acted maliciously for his own motives and beyond the scope of his authority without the intent to further the interests of the employer." *Pope v. Bd. of Sch. Comm'rs*, 106 Md.App. 578, 591–92, 665 A.2d 713, 719 (1995).

■ Plaintiff's entire claim states:

Defendants The Division of Corrections, The Metropolitan Transition Center, Warden Eugene Nuth, Warden Patricia Allen, Commissioner William W. Sondervan were aware of the Plaintiffs' eco-

---

**9.** In their opposition, plaintiffs state that they "further maintain that due to the habitual nature of the Defendants racially discriminatory practices, there was 'an agreement, or a "meeting of the minds" by the Defendants to violate the claimant's Constitutional rights.' " (Pl.'s Opp'n at 12–13 (quoting *Simmons*, 47 F.3d at 1377).) Even this allegation, however, is not in plaintiffs' complaint.

nomic dependence in their employment relationship with The Division of Corrections and The Metropolitan Transition Center. Defendants did intentionally, and with malice, attempt to negatively and improperly interfere with said relationship by failing to allow the same opportunity for advancement in their employment[.]

(Compl.¶ 34.) Plaintiff has not alleged that the individual employees were acting outside the scope of their employment without the intent to further the interests of their employer. As a result, plaintiffs have failed to state a claim for tortious interference. *See Bleich*, 98 Md.App. at 148, 632 A.2d at 475.

### E.

■ Count IV alleges that defendants committed the tort of intentional infliction of emotional distress. (Compl.¶ 35.) To prove a prima facie case of intentional infliction of emotional distress, a plaintiff must show: "(1) the conduct is intentional or reckless; (2) the conduct is extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe." *Carson v. Giant Food, Inc.*, 187 F.Supp.2d 462, 481 (D.Md.2002). Plaintiff has failed to sufficiently allege the fourth element—severe emotional distress.[10]

■ Emotional distress is severe when "no reasonable man could be expected to endure it." *Harris*, 281 Md. at 571, 380 A.2d at 616 (quoting *Restatement (Second) of Torts* § 46 cmt. j); *see also Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F.Supp. 720, 748–49 (D.Md.1996). For example, in *Bryant*, the plaintiff alleged that she was sexually harassed by her supervisor. 923 F.Supp. at 749. As a result of the harassment, she suffered from irritable bowel syndrome, needed counseling, had trouble sleeping, was depressed, and felt demeaned and humiliated. The court denied recovery because the plaintiff failed to show that her emotional distress was so severe "as to have disrupted her ability to function on a daily basis." *Id.* at 750.

■ Plaintiffs alleged emotional distress is not even as severe as that alleged in *Bryant*. Plaintiffs contend that the harassment at work has resulted in "a negative impact on [their] sleep patterns, and energy level and has resulted in chronic low self-esteem and stress." (*See* Compl. ¶ 35.) Plaintiffs have not alleged that the harassment has disrupted their ability to function on a daily basis. Presumably, plaintiffs have alleged all facts relevant to the distress they have suffered. Because the facts are insufficient to support a prima facie case, Count IV is dismissed without leave to amend.

**10.** Defendants also contend that the alleged actions do not "approach the level of outrageousness" required by Maryland law. (Def.'s Mem. at 19.) To be sufficiently "outrageous," conduct must "go beyond all possible bounds of decency, and ... be regarded as atrocious, and utterly intolerable in a civilized community." *Harris v. Jones*, 281 Md. 560, 567, 380 A.2d 611, 614 (1977) (quoting *Restatement (Second) of Torts* § 46 cmt. d (1965)). Liability does not extend "to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (quoting *Restatement (Second) of Torts* § 46 cmt. d). There are legitimate questions about whether plaintiff has sufficiently alleged outrageous conduct. Because plaintiff clearly has failed to allege severe emotional distress, however, I need not determine whether plaintiff has alleged outrageous conduct. *See id.* at 570, 380 A.2d at 616 (discussing but not determining whether conduct was sufficiently outrageous because plaintiff failed to show severe emotional distress).

 

A separate order granting defendants' motion in part is being entered herewith.

## ORDER

For the reasons stated in the accompanying memorandum, it is, this 22nd day of May 2003,

ORDERED that

1. In all counts, the claims against MTC/MDOC and the individuals in their official capacities, except the discriminatory failure to promote claim within Count I, are dismissed without leave to amend;

2. Within Count I, the hostile work environment claim is dismissed without leave to amend, but the discriminatory failure to promote claim survives.

3. The claims against the individuals in their individual capacity in Counts II and III are dismissed with leave to amend.

4. The claims against the individuals in their individual capacity in Count IV are dismissed without leave to amend;

5. Plaintiffs are granted leave to file an amended complaint on or before June 6, 2003.